IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES E. BRAMLETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:13-cv-00204-JPG-PMF |
| MARK S. CARICH, et al., | ) ) ) |
| Defendants. | ) ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is a motion for summary judgment filed by defendants Mark Carich and Jessica Stover (Doc. No. 39). Plaintiff Charles Bramlett is civilly committed and confined at Big Muddy River Correctional Center as a sexually dangerous person. He is proceeding on a retaliation claim, alleging that these defendants exposed him to a serious risk of harm from inmates Victor Blissit and Roy Shivers via housing assignments made on March 8 and October 7, 2011. The defendants seek judgment in their favor, claiming that Bramlett is unable to present evidence that he experienced a deprivation likely to deter future First Amendment activity or supporting an inference of their retaliatory motive. Alternatively, they seek a ruling in their favor on their qualified immunity defense. The motion is opposed on the basis that some evidence would reasonably show ongoing motive to deter future First Amendment expression. Bramlett also contests the qualified immunity defense (Doc. No. 48).

Summary judgment will be entered if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of Bramlett, the nonmoving party. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

To prevail on his First Amendment retaliation claim, Bramlett must prove these elements: (1) that he engaged in activity protected by the First Amendment, (2) that he suffered a deprivation likely to deter future First Amendment activity, and (3) a causal connection between the two. On the third element, the burden of proof is divided among the parties. Initially, plaintiff must show that the defendant's conduct was a motivating factor of the plaintiff's injury. The defendant can rebut an inference of retaliatory motive by showing that the harm would have occurred anyway. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

### I. Protected First Amendment Activity

The parties do not dispute that Bramlett's prior litigation against defendant Carich qualifies as protected First Amendment activity. Although this is not an issue for trial, some clarification is appropriate. The defendants refer to a "2008 lawsuit" in their brief (Doc. No. 40). Bramlett's retaliation claim is based on a lawsuit he filed on February 3, 2011: *Bramlett v. Big Muddy River Correctional Center*, Case No. 11-97-MJR (Doc. No. 2, pp. 3, 6). The Court takes judicial notice that the Clerk's records show that Carich was named as a defendant in that case and waived service of process on November 23, 2011. The litigation was resolved at the district court level in November, 2013. An appeal was resolved in November, 2014. Bramlett's litigation against Carich between February 3, 2011, and November 26, 2014, qualifies as protected First Amendment activity.

### II. Deprivations Likely to Deter Future First Amendment Activity

On March 8, 2011, defendant Stover evaluated potential cell moves involving at least ten civilly committed men. She initially insisted on making a housing assignment that would have required Bramlett to share a cell with Victor Blisset. Stover informed Blisset of her intentions,

and learned that Blisset was adamantly opposed to the plan.  Bramlett learned about Stover's plan and anticipated physical conflict with Blissit.  He experienced mental anguish, thinking Stover's housing decision was tantamount to a threat on his life.  Based on Blissit and Bramlett's response to the housing plan, Stover and others reworked the cell moves.  The Bramlett/Blissit housing assignment never materialized.

On October 7, 2011, Bramlett was moved from the cell he had been sharing with David Watkins on 4C wing to a cell on 4B wing.  After Bramlett was moved, his space he occupied in the 4C cell remained vacant for a period of time.  A similar housing change was made in September, 2014, about seven weeks after another civilly committed man (Mr. Howe) received a program ticket and filed a civil rights lawsuit, Case No. 14-844-SMY.  Bramlett and Howe perceived their new housing assignments as punitive and intended to deter future lawsuits.  Watkins shares this perception of a punitive attitude directed against committed men who express their displeasure with Ms. Stover's opinions.  As a result, he is afraid to seek an administrative or judicial remedy.

The housing change planned for Bramlett in early March and the housing change implemented on October 7, 2011, are not actions or deprivations likely to deter the exercise of future First Amendment activity.  This is an objective standard, viewed from the perspective of a person of "ordinary firmness." *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989).  When First Amendment retaliation occurs in the employment context, a lateral transfer is not a sufficient deprivation; a demotion is.  *Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006).

The March, 2011, verbal plan to change Bramlett's housing assignment would not deter a committed person of ordinary firmness from filing a civil rights lawsuit in the future because the

3

offensive action (forcing Bramlett to share living space with Blisset for a period of time) never materialized. Distress and unhappiness flowing from an expectation of exposure to offensive conduct is not a deprivation.

The October 7, 2011, housing reassignment would not deter a committed person of ordinary firmness from filing a civil rights lawsuit in the future. The housing reassignment from 4C wing to 4B wing was akin to a lateral transfer. On 4C wing, Bramlett was exposed to sexually dangerous men. Some, like Watkins, were disagreeable about living arrangements. Others, like Blisset, wanted to fight. Others wanted to act out sexually and/or steal (Doc. No. 40-1, pp. 19, 23, 41). On 4B wing, Bramlett was exposed to convicted inmates and civilly committed persons who refused treatment. He was within reach of Roy Shivers, who may have wanted to fight, and had a scuffle with Richard Kalinowski (Doc. No. 40-1, pp. 19, 26, 28, 42-43). When Bramlett left 4B, he experienced housing arrangements that were "worse or about as bad" as his experience on 4B (Doc. No. 40-1, p. 35). While the 4C to 4B cell move may have been undesirable and subjectively perceived as punitive, no facts logically demonstrate that Bramlett experienced a deprivation on 4B that was likely to deter a person of ordinary firmness from engaging in future First Amendment activity. In sum, Bramlett has not presented facts sufficient to satisfy the second element of his retaliation claim.

### III.   Litigation as a Motivating Factor

As noted above, Bramlett filed a civil rights suit against Carich on February 3, 2011. The alleged retaliatory conduct occurred on March 8 and October 7, 2011, after the lawsuit was filed but *before* Carich was served with a copy of Bramlett's complaint. Carich received his copy of the complaint and executed a waiver of service on November 23, 2011. Considering this reverse chronology, Bramlett has not presented facts supporting a reasonable inference that either

housing decision attributed to Carich and Stover was motivated by a desire to retaliate for Bramlett's lawsuit.  Bramlett has not presented facts sufficient to satisfy his burden on the third element of his retaliation claim.

### IV.     Qualified Immunity

In view of the absence of proof outlined above, the undersigned does not reach the merits of the qualified immunity defense.

### V.     Conclusion

IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. No. 39) be GRANTED.  Judgment should enter in favor of Mark Carich and Jessica Stover and against Charles Bramlett on Bramlett' First Amendment retaliation claim.  If this recommendation is adopted, no claims will remain for decision.

**SUBMITTED: November 24, 2015.**

> **s/Philip M. Frazier**
> **PHILIP M. FRAZIER**
> **UNITED STATES MAGISTRATE JUDGE**